949 A.2d 218 (2008)
401 N.J. Super. 1
SPENCER SAVINGS BANK, SLA, Plaintiff-Appellant,
v.
Walter SHAW and Carole Shaw, his wife, Defendants-Respondents.
No. A-6338-06T2
Superior Court of New Jersey, Appellate Division.
Argued April 2, 2008.
Decided May 28, 2008.
Vincent J. Massa, III, Hackensack, argued the cause for appellant (Jones and Jones, attorneys; Mr. Massa, III, on the brief).
Cecilia M.E. Lindenfelser, Roseland, argued the cause for respondents (Law Offices of Charles A. Rosen, attorneys; Ms. Lindenfelser, on the brief).
Before Judges PAYNE[1] SAPP-PETERSON and MESSANO.
*219 The opinion of the court was delivered by
MESSANO, J.A.D.
Plaintiff Spencer Savings Bank, SLA, appeals from the July 19, 2007, order that denied its summary judgment motion and dismissed its foreclosure complaint against defendants Walter and Carole Shaw. As the trial judge noted, at issue "is the novel question of whether a lender may charge the borrower attorney's fees and costs during the interim period between the expiration of the right to cure as set forth in the [n]otice of [i]ntention to [f]oreclose (NOI), and the commencement of a foreclosure complaint." In a comprehensive, well-reasoned written opinion, Judge Peter E. Doyne answered the question in the negative, denied plaintiff's motion for summary judgment, and dismissed its complaint. We affirm substantially for the reasons expressed by Judge Doyne.
The facts are essentially undisputed. On June 24, 2004, defendants executed and delivered to plaintiff a home equity line of credit agreement in the maximum amount of $250,000. The corollary note was payable at an adjustable rate of interest based upon "the then existing . . . Prime Rate as published in the `Money Rates' section of the Wall Street Journal," "minus .50%." Defendants were to make monthly payments on the last day of each month over a ten-year draw period, followed by payments of principal and interest until the note was paid in full. Plaintiff secured the loan with a first lien mortgage on defendants' residence at 250 Oxford Avenue, Saddle Brook.
Defendants failed to make the payment that was due on October 31, 2006, and on November 30, 2006, plaintiff issued a written NOI. The NOI advised defendants that they "could avoid the initiation of foreclosure proceedings by paying [the] sum [then] due within thirty [] days of th[e] letter, which expire[d] December 30, 2006." The NOI further provided that if defendants failed to pay the amount due within the thirty days, plaintiff "intend[ed] to exercise [its] right to accelerate the mortgage payments, consider the mortgage in default and initiate foreclosure proceedings. . . ." The NOI advised defendants that they
Ha[d] the right to cure [their] default, and bring [their] mortgage payments current, after the date of expiration of th[e] letter, until the entry of the foreclosure judgment or order of redemption; however [they] w[ould] be responsible for [plaintiff's] court costs and attorney's fees, calculated consistent with the Rules Governing the Courts of the State of New Jersey, incurred in the foreclosure proceedings.
Defendants did not make any payments by December 30, 2006. Plaintiff's counsel then sent defendants a letter dated January 2, 2007, setting forth the total due for the three unpaid monthly payments, i.e., October, November, and December, and demanding defendants pay that amount plus an unspecified amount of attorney's fees. Defendants called plaintiff's counsel and requested the figures for reinstatement of the loan; this resulted in further correspondence in which plaintiff's counsel set forth the full amount due, but inadvertently included the payment for January. On January 16, 2007, plaintiff's counsel sent another letter to defendants, acknowledging receipt of their payment of the monthly amounts for October, November, and December. However, he indicated that defendants had failed to pay $1174.50 comprised of 1) costs associated with a property report, inspection report, credit report, and appraisal; and 2) attorney's fees. The letter gave defendants until January 18, 2007, to make payment, *220 or their "previous tender w[ould] be returned . . . and foreclosure proceedings w[ould] continue" until full payment was made.
Defendants requested a short extension, which plaintiff granted until January 31, 2007. When defendants did not pay the costs and fees by that date, plaintiff commenced foreclosure proceedings on February 6, 2007. Defendants filed an answer that asserted, among other things, that plaintiff was not entitled to collect the fees and costs incurred prior to the foreclosure complaint being filed. Plaintiff then moved for summary judgment requesting that defendants' answer be stricken and the complaint be returned to the foreclosure unit as an uncontested matter.
Judge Doyne analyzed the issue presented by considering two specific portions of the Fair Foreclosure Act (the FFA), N.J.S.A. 2A:50-53 to -68. He noted that N.J.S.A. 2A:50-56 sets forth the mandatory requirements of the lender's NOI, which includes a minimum thirty day period during which the debtor can "cure the default to avoid initiation of foreclosure proceedings." N.J.S.A. 2A:50-56(c)(5). The NOI must also advise the debtor that if he "does not cure the default by the date specified," the lender may then
(6) . . . take steps to terminate the debtor's ownership in the property by commencing a foreclosure suit in a court of competent jurisdiction.
(7) [] [I]f the lender takes the steps indicated pursuant to paragraph (6) . . . a debtor shall still have the right to cure the default . . . but . . . the debtor shall be responsible for the lenders' court costs and attorneys' fees in an amount not to exceed the amount permitted pursuant to the [Court Rules].
[N.J.S.A. 2A:50-56(c)(6) and (7) (emphasis added).]
Plaintiff urged the judge to consider, however, the language contained in the next section of the FFA, entitled, "Curing of default." N.J.S.A. 2A:50-57. We quote those relevant portions of that section at length as follows:
a. Notwithstanding the provisions of any other law to the contrary, as to any residential mortgage for which a[NOI] is required to be given pursuant to [the FFA] . . . the debtor . . . shall have the right at any time, up to the entry of final judgment or the entry . . . of an order of redemption . . . to cure the default. . . .
b. To cure a default under this section, a debtor shall:
. . . .
(3) pay or tender court costs, if any, and attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey[.]
. . . .
c. To cure a default under this section, a debtor shall not be required to pay any charge, fee or penalty attributable to the exercise of the right to cure a default as provided for in this act.
. . . .
e. If a default is cured prior to the filing of a foreclosure action, the lender shall not institute a foreclosure action for that default. If a default is cured after the filing of a foreclosure action, the lender shall give written notice of the cure to the court. Upon such notice, the court shall dismiss the action without prejudice.
Plaintiff argued that this section should control the question presented, and, based upon the language of subsection (b)(3), it was clear that the legislature did not foreclose the ability of any lender to recoup from the debtor the costs and fees incurred between service of the NOI and the filing of a foreclosure complaint.
*221 Plaintiff further argued that at worst, the statute was ambiguous about the issue, and it urged Judge Doyne to apply equitable principles and allow it to recoup its costs and attorney's fees rather than absorb those items itself. Plaintiff noted the changes made in 2006 to Rule 4:64-1(a) which now requires
Prior to filing an action to foreclose a mortgage . . . the plaintiff shall receive and review a title search of the public record for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to foreclosure and shall annex to the complaint a certification of compliance with the title search requirements of this rule.
Since plaintiff was required to incur at least the cost of a title search, and presumably attorney fees by having its counsel review the search before filing the foreclosure complaint, it argued the statute should obligate defendants to pay those costs to effect a cure.
Judge Doyne, however, found the statute provided a "clear mandate" and was intended "to provide residential mortgagors with various rights and safeguards which must be protected." He noted that if the two portions of the statute presented an "anomaly," it was "the responsibility and the province solely of [the] [L]egislature" to "address" it. As a result, he denied plaintiff's motion for summary judgment, and, noting defendants had tendered the full amount of past payments due, he dismissed the complaint "so as to avoid unnecessary motion practice and expense." This appeal ensued.
Plaintiff does not appeal the propriety of the dismissal of its complaint if indeed it was not entitled to recoup the costs and attorneys' fees from defendants. However, it has reiterated before us the arguments raised before Judge Doyne and contends that 1) the statute obligates defendants to pay these amounts in order to cure the default after service of the NOI; and 2) if the statute is ambiguous, that ambiguity ought to be resolved in its favor. Defendants counter by arguing that the statute is clear on its face, and, if it is ambiguous, the legislative history of the FFA and general equitable principles require that lenders not be allowed to collect the fees and costs incurred between the service of the NOI and the filing of the foreclosure complaint.
The FFA is remedial legislation intended to provide protection to residential mortgage debtors. Atlantic Palace Dev. LLC v. Robledo, 396 N.J.Super. 171, 178, 933 A.2d 48 (Ch.Div.2007). By enacting the FFA, the legislature found and declared it to be the public policy of New Jersey "that homeowners should be given every opportunity to pay their home mortgages, and thus keep their homes; and that lenders will be benefited when residential mortgage debtors cure their defaults and return defaulted residential mortgage loans to performing status." N.J.S.A. 2A:50-54. This clear statement of legislative intent is bolstered further by N.J.S.A. 2A:50-61, the "non-waiver" provision of the FFA. See Cho Hung Bank v. Kim, 361 N.J.Super. 331, 346, 825 A.2d 566 (App.Div.2003) (noting "non-waiver" provisions as indicative of legislative intent to require strict compliance with the FFA).
Although plaintiff cites to the committee report that accompanied passage of the FFA to support its interpretation of N.J.S.A. 2A:50-56 and -57, we conclude the language of the statute itself is clear and unambiguous. "When the meaning of the statutory language is clear and unambiguous, our duty is to enforce the statute as written." Miah v. Ahmed, 179 N.J. 511, 520, 846 A.2d 1244 (2004).
*222 The NOI is a mandatory notice that must be fully complied with in order for the foreclosure complaint to issue; in fact, the foreclosure complaint must necessarily plead compliance with the NOI'S requirements. Kim, supra, 361 N.J.Super. at 345, 825 A.2d 566; N.J.S.A. 2A:50-56(f); R. 4:64-1(b)(13). Only if the lender "commenc[es] a foreclosure suit in a court of competent jurisdiction," "shall" "the debtor . . . be responsible for the lender's court costs and attorneys' fees in an amount not to exceed that amount permitted pursuant to the Rules Governing the Courts of the State of New Jersey." N.J.S.A. 2A:50-56(c)(6) and (7). It logically and unambiguously follows that until the foreclosure complaint is filed, plaintiff is not entitled to make defendant legally "responsible" for the payment of those costs and fees. The NOI at issue in this case actually supports this conclusion because in it, plaintiff told defendants that they would be responsible for costs and fees "incurred in the foreclosure proceedings." When the NOI was issued, of course, there was no foreclosure complaint filed and defendants tendered all monthly payments due before the foreclosure proceeding commenced.
Despite plaintiff's argument to the contrary, we do not find that the provisions of N.J.S.A. 2A:50-57 require any different result. In order to cure a default, that section provides that the debtor must "pay or tender" "all sums which would have been due in the absence of default, at the time of payment or tender." N.J.S.A. 2A:50-57(b)(1). In the instant case, the only sums due in the absence of defendants' default would have been the October, November, and December monthly payments. Defendants tendered these sums before the foreclosure complaint was filed.
Plaintiff argues, however, that subsection (b)(3) also requires defendants to pay in order to cure their default, "court costs, if any, and attorneys' fees in an amount which shall not exceed the amount permitted under the Rules Governing the Courts of the State of New Jersey." (Emphasis added). Plaintiff argues that the highlighted portion of the statute is only a limit upon the amount of the attorneys' fees charged, and that the language in no way limits the ability to impose the obligation upon the debtor in the first instance. It further argues that by including the phrase, "if any," the legislature intended that payment of attorneys' fees would be required even in the absence of the filing of a foreclosure complaint.
First, we note that in the instant matter, plaintiff sought to impose costs that were neither court costs nor attorneys' fees. The statute provides no authority for this and plaintiff has not cited any in support of its position. Second, we think it clear that by including both court costs and attorneys' fees together in the same section, the legislature intended payment by the debtor of attorneys' fees if they were associated with the court costs, and only if the court costs were incurred by the lender, i.e., upon the filing of a foreclosure complaint. We presume had the legislature intended to permit the separate recovery of each item, it would have so specified. See Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 112, 853 A.2d 940 (2004)(noting the legislature's ability to express its intention by omission).
Third, and perhaps most importantly, the FFA's repeated reference to the Court Rules is more than a limitation upon the specific amount of attorneys' fees recoverable by a lender. Our Rules prohibit the recovery of any amount of attorneys' fees unless specifically provided for by the Rules. It is clear that the Rules only *223 permit attorneys' fees to be recovered when a lender actually files a foreclosure complaint, not before. Rule 4:42-9(a)(4) explicitly provides that "[n]o fee for legal services shall be allowed . . . except" "[i]n an action for the foreclosure of a mortgage[.]" Similarly, Rule 4:42-10 permits the discretionary recovery of "all legal fees and reasonable charges necessarily paid or incurred in procuring searches relative to the title of the subject premises" "[i]n an action for the foreclosure of a mortgage." It is undisputed that the attorneys' fees and costs of title searches plaintiff incurred and sought to impose upon defendants were not "in" the foreclosure action.
In Barrows v. Chase Manhattan Mortg. Corp., 465 F.Supp.2d 347 (D.N.J.2006), the District Court interpreted the FFA to require a debtor to be responsible for costs and attorneys' fees, "if the lender institutes a foreclosure suit[.]" Id. at 358 (emphasis added). The Court found that in this regard, "the FFA incorporates the court rules governing the calculation of attorneys' fees and the imposition of costs." Ibid.
This position is further supported by at least one learned treatise on the subject. As Judge Doyne observed, Myron C. Weinstein has opined that the FFA offers the debtor a "no-penalty" cure between the expiration of the NOI and the initiation of the foreclosure complaint "because court costs and attorneys' fees cannot be included in the cure amount." Weinstein, New Jersey Mortgage Practice: The Fair Foreclosure Act, § 4.07 (3d Ed. 2007). The debtor's ability to cure after the initiation of a foreclosure complaint is deemed to be a "`penalty' cure . . . because court costs and attorneys' fees may be included in the cure amount." Id. at § 4.08.
In sum, we conclude that plaintiff was not entitled to recoup the assorted costs and attorneys' fees it incurred prior to the initiation of the foreclosure complaint from defendants, that it was not entitled to proceed to foreclosure since defendants had effected a cure of their default by tendering the full amount due prior to the initiation of the foreclosure action, and that Judge Doyne properly denied plaintiff's motion for summary judgment and dismissed its complaint.
Affirmed.
NOTES
[1] Judge Payne did not participate in oral argument. However, the parties consented to her participation in the decision.